### ROSE v. THORNLEY.

A testator directed his real estate to be sold at the discretion of the executor, who was to receive the rents until a sale was made, and pay them over as directed in the will.  After the death of one of the life tenants, a portion of these rents and of the *corpus* of the estate, when sold, became payable to infants in another State; whereupon the administrator *cum testamento annexo* filed his complaint, asking authority from the court to pay these funds to the father of these infants, upon proper security, as well the funds then in hand as those to be received prior to final settlement.  *Held*, that as the complaint did not seek to put the estate into court for administration, and as there was no insolvency or other complexity requiring the court to interfere, the sale of the real estate must be made by the administrator as directed by the will, and not by the master.

Before Hudson, J., Charleston, December, 1889.

This was a suit by Arthur B. Rose, as trustee and administrator, against John Thornley and others.   The master, to whom the case was referred, reported as follows, omitting his statement of the pleadings and facts, which are sufficiently stated in the opinion :

As to the practice of the court, at the request of the solicitors, I respectfully report as follows :

Where (as in this case) the heirs at law of the testator are parties to the proceedings, it was held to be competent for the court

---

[1] Not yet filed when this case was put to press.  It will probably be filed in time to be included in this volume.—Reporter.

to appoint any person to execute a conveyance; as in *Deen* v. *Sandford* (9 Rich. Eq., 423), where land has been sold by an executor and trustee, but no conveyance had been made, it was held competent to order the conveyance to be made, either by the complainant, who was administrator of the deceased executor and trustee, or by the commissioner, if the heirs of the testator were parties to the proceedings.

In the case of *American Bible Society* v. *Noble* (11 Rich Eq., 186), the bill was filed by distributees against the widow of John B. Bull and his administrator, as he was supposed to have died intestate, for partition. Some of the personalty was sold by the commissioner under the order of the court. A will of Bull was discovered after the filing of the bill and adjudged to be valid, and Noble qualified as executor. By the Circuit decree the commissioner was ordered to make sale of the real and personal estate. The executor appealed on the ground that he was directed by the will to make the sale, and that the sale ordered by the court should be made by him and not by the commissioner. The Appeal Court sustained the appeal. The opinion of the court was delivered by Chancellor Wardlaw. In it he says (page 199): "When the order for sale of the estate was originally granted, John Bull seemed to be intestate as to his whole estate, and this court having custody of the estate property, directed the sale to be made by its own officers; and as far as the order has been executed it must be supported, and if the executor is dissatisfied with his compensation for trouble and management, his remedy is in the law court for *extra* compensation under the act of 1789. But, as we understand the facts, Berry Hill is still unsold, and as we have adjudged this tract to be parcel of the general Bull estate, which the executor was directed by the testator to sell, and as there is no charge of insolvency or misconduct made as to the executor, we adjudge that it is his privilege to make sale of Berry Hill, and so much of the decretal order as directs it to be made by the commissioner be rescinded." Chancellor Johnson concurred throughout, except as to the right of the executor to sell, as to which he says: "I apprehend that much inconvenience and perplexity will arise in future cases, where the executor is authorized to make partial sales. Sound practice (and this is

only a question of practice) requires that where an estate is to be administered by the court, the whole funds should be in the hands of its officers." (Page 204.)

In *Thomson, ex'or*, v. *Palmer* (2 Rich. Eq., 32), it was held that where an executor of an insolvent estate files a bill enjoining creditors from suing, and calling them in under an order, the funds in the hands of an executor should be placed in the possession of the court, and if a sale be ordered, whether, it seems, of real or personal estate, the sale should be made by the master and the funds received by him. In delivering the opinion of the Appeal Court, Chancellor Johnson states the principles and reasons which govern the practice of the court in terms more general than were perhaps necessary in that particular case. He says: "There remains another point requiring the special notice of the court. When an executor or administrator comes for the aid of the court in administering the estate in his hands, the court should be placed in possession of the funds to be administered. And when the court is called upon to order a sale of land in aid of assets, it should have the command of the proceeds of sale to be administered. We should not be required to enjoin creditors from proceeding elsewhere, unless we are placed in possession of the funds to which the creditors are entitled, so as to enable us to satisfy all the just rights with which we have interfered. The sale which the executor was allowed to make should have been made by the officers of this court; by which not only the fund would have been in the hands of the court, but the sale would have been made at far less expense, the commissions of the master being less than those of the executor."

These cases are, I think, sufficient to show the practice of the court prior to the adoption of the Code of Procedure in 1870. Section 307 is as follows: "Property to be sold.must be sold in the county where it lies and in the following manner: all sales of real estate under the orders of the Probate Court shall be made by the judge of probate; all sales under the order of the court where the title is to be made by the clerk of the Circuit Court, shall be made by the clerk. All other judicial sales shall be made by the sheriff as now provided by law. In those counties where the office of master exists, the master shall make all sales

ordered by the court in granting equitable relief conformably to the practice of the Court of Equity of this State before said courts were abolished; upon such sale being made and the terms complied with, the officer making the same must execute a conveyance to the purchaser, which conveyance shall be effectual to pass the rights and interest of the parties adjudged to be sold."

In the case of *Armstrong* v. *Humphreys* (5 S. C., 128), it was held that the provisions requiring property adjudged to be sold, to be sold in the county where it lies and by the sheriff of the county was mandatory, and even if it was directory merely, it would still follow that the courts were bound to pursue such direction, and a decree or order disregarding it would have to be considered as erroneous.

By the master's act, 1878 (16 S. L., 609 Gen. Stat., § 790), enacts "that each master shall make all such sales as the court may order him to make in granting equitable relief, and shall execute all proper conveyances therefor." In *Ostendorff* v. *Brown* (15 S. C., 616), it was held that "since the master's act of 1878 (16 Stat, 607), all sales in the counties therein named ordered by the court in equity cases must be made by the master."

The counsel for the guardian of the minor children of Mrs. Thornley contends that it is of great importance to the interest of the said minors that the sale of the real estate of their grandfather, Josiah S. Payne, shall be made by the master under the decree of the court in proceedings to which all who have an interest in the property are parties and bound by the decree, rather than by an executor or trustee. The expenses of a sale by the administrator would be greater than if the sale is made by the master. The administrator would have to employ a broker to sell, whose charges would come out of the proceeds of sale. The costs of papers where sales are made by a broker are generally considerably larger than when made by a master. And if, as is probable, the parties who have an interest in the land should buy at said sale to protect their interest and to prevent sacrifice, the additional amount which they would be required to pay for papers would reduce the amount they would receive on account of their shares.

The plat of Mr. Simons, according to which it is agreed that

the sale should be made, divides the high land into two hundred and seventeen (217) lots. The commissions of the master would be less than those to which the administrator, with the will annexed, would be entitled. (See *Thomson* v. *Palmer, supra.*)

He contends further, that the plaintiff has voluntarily come into court asking its aid in administering the estate of his testator and his protection in paying over not only the income but the *corpus* of the estate, as well the proceeds of sale of the real estate as of the personal to the parties entitled thereto, some of whom are not within the jurisdiction of the court. The court has recognized and sanctioned the necessity and propriety of the application by ordering the fees of plaintiff's counsel to be paid out of the estate. That the guardian of the absent minors having been made a party, has invoked the protection of the court for said minors, and prayed that the real estate in which they have an interest shall not be sold by the administrator and trustee at his discretion, but that it shall be sold only by the order and direction of the court, and that the said administrator and trustee shall account for the rents and profits of said real estate received by him. That this constitutes a case for the granting of equitable relief conformably to the practice of the Courts of Equity of this State before said courts were abolished, and that said courts would, under the circumstances of this case, have ordered the sale of the real estate, the proceeds of which are to be paid over under its orders and decrees to be made by the officer of the court, and the said proceeds held by him, and the conveyance to be made by said officer so as to pass the interest of all parties to the cause, infants as well as adults.

But he further contends that the provisions of the Code of Procedure and the master's act, requiring that all sales ordered by the court in granting equitable relief (or, as expressed in *Ostendorff* v. *Brown, supra,* in equity cases), shall be made by the master in the counties in which there is a master, are *mandatory* and cannot be disregarded, or even if directory merely, it would still follow that the courts are bound to pursue such directions, and a decree or order disregarding it would have to be considered as erroneous. *Armstrong* v. *Humphreys, Ostendorff* v. *Brown, supra.*

The counsel for the administrator and trustee contends that the plaintiff does not, in his complaint, seek the aid of the court in administering the estate of his testator, nor does he ask the order of the court for the sale of the real estate, but, on the contrary, avers his purpose of selling the same under the power given him in the will, but only makes the application for the benefit of the children of Mrs. Thornley to enable them to receive their shares, no order being necessary to enable Mrs. Graveley to receive her shares. That he is entitled to sell the real estate under the power given in the will, although the court may order and direct him as to the time and terms of said sale, so as to protect the interest of the minors, and to the disposition to be made of their shares. That the court should not deprive him of the commissions on such sales to which he is entitled. 11 Rich. Eq., 156, *supra.* That an order for the sale of the real estate by the master not having been contemplated by the complainant, and not therefore being within the scope and purpose of the complaint, it is questionable whether purchasers at a sale made by the master would accept the title, as it may be questionable whether the court has jurisdiction to make such sale under these proceedings.

As the solicitors request me to report my conclusion upon the question raised, I will do so, although feeling some delicacy in the matter, because it is important that the question shall be settled by the court, and it is best that they be brought to a practical issue. Without recapitulating the reasons, I will only state that I concur in the views taken by the counsel for the guardian of the minor defendants. I respectfully recommend that the entire real estate of the testator, Josiah S. Payne, remaining unsold, be sold in such parcels and upon such terms as the court shall direct, and on such day as the solicitors in the cause shall agree upon in writing. That the sale be ordered to be made by the master, after due advertisement, and he hold the proceeds of sale subject to the further order of the court.

Upon exceptions by plaintiff to this report, it was overruled; and from the Circuit decree the defendants appealed to this court.

*Mr. H. E. Young,* for appellants.

*Mr. J. Bachman Chisolm,* contra.

September 29, 1890. The opinion of the court was delivered by

Mr. Justice McGowan.    Josiah S. Payne died August 22, 1859, leaving a will and heirs and next of kin, as follows, viz.: widow Isabella I. Payne and two daughters, Maria T. Graveley, wife of John Graveley, of England, and Julia Henrietta Payne, afterwards the wife of John Thornley, of Charlottesville, Virginia. Among other things, the testator directed by his will that his executor should sell and dispose of the rest and residue of his estate, real and personal, "as soon after his death as he can do so conveniently and judiciously, so as to convert the whole into money," but leaves the times, terms, and mode of sale to his sole judgment and discretion exclusively, "and until such sale shall be effected, I authorize and empower him ·to receive the rents." After directing some legacies to be paid, the sale moneys of the residue are given to J. Clarence Cochran, Arthur B. Rose, and Cowlam Graveley, to be invested, and the income to be invested and paid, one-third to Mrs. Payne for life ; one-third to Mrs. Graveley for life, and upon her death to her issue if she left any, and if none, to the legatees under her will, and if no will, to testator's "right heirs;" and the remaining third to Julia Henrietta Payne in the same way. The part given to his wife for life went, after her death, to the daughters above. The other clauses of the will are unimportant in this case except the last, which is as follows : "I nominate, constitute, and appoint my good friend, J. Clarence Cochran, executor of this my will ; with full power to sell my whole estate, real and personal," &c.

Julia Henrietta Payne married John Thornley, of Virginia, and during her life received her share of the income, but she died January 23, 1885, leaving surviving her husband, John Thornley, and four children, viz., Josiah Payne, Julia, Jane Riching, and John, who then became entitled in their own right to a considerable interest in the estate of their grandfather, the testator. Soon after, in April, 1885, the executor, Mr. Cochran, also died, without having fully administered the estate, and especially leaving unsold (as it was considered injudicious to sell)

a tract of land, partly marsh, on Charleston Neck, known as
"Payne's farm."

Dr. Arthur B. Rose, the only remaining trustee under the
will, took upon himself the duties of the trust, and also qualified
as administrator *de bonis non*, with the will annexed.    Upon
taking charge of the unadministered estate, he found that the
children of Mrs. Thornley were entitled to a portion of the in-
come in his hands; and, although they needed it for maintenance
and support, there was no one to whom it could be safely paid,
as they were minors, beyond the limits of the State, and without
guardians.    Under these circumstances, on December 15, 1885,
he, as the representative of the estate, and with the entire con-
sent of all the parties, instituted these proceedings to obtain the
authority of the court to pay the share of the Thornley children
to their father, Dr. John Thornley, without his being appointed
guardian.    The complaint, among other things, contained the
following statement: "That upon the death of Mrs. Thornley,
her children became entitled under the will, not only to one-half
of the net income to which their mother was entitled during her
life, but the life estate having fallen into the *corpus*, to one half
of the estate; that the plaintiff has in his possession, as trustee
and administrator, the income to which the children of Mrs.
Thornley are entitled, &c.; * * * that the plaintiff is advised
that the said children being minors, non residents, and having no
guardian under the control of the courts of this State, it would
not be proper or safe to transfer the funds beyond the jurisdic-
tion of this court without its order to do so upon proper security
given; that he is anxious that the funds now in his hands, and
such as shall come from investments up to the time of final set-
tlement, be paid to said children, but also that upon the final
settlement of the estate he may be authorized and directed to
pay over the *corpus;* that he is informed that said children are
necessitous, and that their father's means are quite limited," &c.
The court sustained this view, and ordered the administrator to
pay over to Dr. John Thornley, father of the minors, the income
in his hands belonging to them for their use, &c.

But in 1889 Dr. Thornley, the father, died, and thereupon
Frank A. Massie was appointed guardian of the children in the

State of Virginia.   He asked and obtained leave, as guardian, to, come into the case as a defendant; and his answer, for the first, time, changed the consent character of the proceedings—demanded an accounting, and alleged "that the real estate now in the hands of the trustee and administrator with the will annexed cannot now be sold by him except under the direction of the court; that it produces little or no income, and that it should be sold under the direction of the court."

The question whether Dr. Rose, the representative of the estate, by the proceeding which he filed for a particular purpose, had forfeited the right given by the will to make the sale, and that the master, under the order of court, must make it, was referred to master Miles, who made a full and elaborate report, reviewing the authorities (which should appear in the report of the case), and recommending that the court order the sale to be made by the master.   Upon exceptions, this report came before Judge Hudson, who adjudged that Arthur B. Rose, as trustee and *administrator de bonis non*, with the will annexed, of the estate of Josiah S. Payne, has full power of sale of the real estate of Josiah S. Payne, without the intervention of the court, and overruled the report.

From this judgment, Frank A. Massie, guardian, and Julian Thornley, appeal upon the following grounds: "I. That the trustee and administrator, Dr. A. B. Rose, having craved the aid of the court in the administration of the estate entrusted to him, put the estate into the care and custody of the court, and that the court should have taken care that the estate is administered for the advantage of those beneficially entitled thereto, and not for that of the administrator or trustee.   II. That in this case the court, even if it does not order the sale to be made by the master, should have kept a supervision over the administrator and trustee and required him to sell the property under the direction of the court.   III. That as this is an equity case, all sales of the property involved should be made by the master, not only as a matter of law, but also as a matter of discretion, because sales made by the master are made at far less expense than if made by the administrator, &c.   IV. That his honor should have further held that the court will not allow an administrator, executor,

21—33

or trustee to burden those interested in the estate with a double set of costs. Either trusting to himself and his counsel, he must administer the estate himself, or if he goes into court for its aid, and there creates extra costs and expenses and relieves himself of responsibility, he must then administer the estate under the direction of the court in the least expensive manner and through its officer. And, finally, all this is made the stronger and the more obligatory on the court where minors are concerned."

Under the law every man has the right to make his own will, and, if he desires to have his property sold, to declare how and by whom it shall be done. When Dr. Rose received his letters as administrator with the will annexed, there can be no doubt that he had the right (section 1972, G. S.) to sell all the unsold property of the testator, Payne, according to the terms of his will; and, as it appears, he had the land surveyed—divided into lots—and was making arrangements to sell when the earthquake came, which made a sale at that time, or soon after, unadvisable. Nothing has since occurred to deprive him of that undoubted right, unless it may be found in the proceedings which he instituted in the court after the death of Mrs. Thornley (1885) for the purposes therein indicated. We think that the doctrine of *Thomson* v. *Palmer*, 2 Rich. Eq., 36, is sound—that "when an executor or administrator comes for the aid of the court, in administering the estate in his hands, the court shall be placed in possession of the fund to be administered, and when the court is called upon to order a sale of land in aid of assets, it should have the command of the proceeds of sale to be administered," &c. We do not, however, see the analogy claimed to exist between that case and the one at bar. There is no suggestion here that the estate is insolvent, with numerous creditors, or that there is any such complexity in it as to make it necessary that the court should administer it, or that any such request was made.

Undoubtedly an executor, under certain circumstances, may ask the court to relieve him, and to take upon itself the administration of the estate; but we do not understand that such must be the result of every application for any purpose to the court, but its effect must depend largely upon the character of the application made. If the proceedings in this case must have the effect

of transferring to the court the whole administration, it can only be as a necessary incident or legal effect, for the whole record shows that such intention or expectation was not in the minds of the executor or any of the parties. It does not strike us as exactly accurate to say that the executor "put the estate into the care and control of the court." Nor do we think that such result was the necessary consequence of the proceeding. The executor, Dr. Rose, had in his hands certain funds belonging to the Thornley children, who were minors without guardians. He could not be expected to pay them until they were represented by some one who could give legal acquittance; but he was willing to make payment to the father, provided the court would authorize such payment. The primary object of the proceeding was to obtain that authority for the exclusive benefit of those in whose behalf complaint is now made. There was not an intimation in the proceedings as to transferring the administration to the court.

We cannot distinguish this case in principle from that of *The American Bible Society* v. *Noble*, 11 Rich. Eq., 186. In that case a bill was filed by distributees against the administrator and widow of John B. Bull, as he was supposed to have died intestate. Some of the property had been sold by the order of the court, when a will was discovered. By the Circuit decree the commissioner was ordered to make sale of the remaining property. The executor appealed, on the ground that he was directed by the will to make the sale; held, that the Circuit decree was erroneous, and that the executor had the right to make the sale. In delivering the judgment of the Equity Appeal Court, Chancellor Wardlaw said: "As we understand the facts, 'Berry Hill' is still unsold, and as we have adjudged this tract to be parcel of the general Bull estate, which the executors were directed by the testator to sell, and as there is no charge of insolvency or misconduct made as to the executor, we adjudge that it is his privilege to make the sale of 'Berry Hill,' and that so much of the decretal order as directs it to be made by the commissioner be rescinded," &c. Here there is not the slightest intimation of insolvency or misconduct on the part of the executor. In the late case of *Anderson* v. *Butler* (31 S. C., 198), the Chief Justice, in delivering the judgment of the court, said: "Now, this power

[to sell] having been conferred, and it not being revoked, it is the law of the case and must control, unless suspended or vacated by the courts for some reason authorizing the court thus to suspend or to vacate. Doubtless an executor may be removed from his office and his powers revoked by the courts for subsequent insolvency, incompetency, or fraudulent conduct in reference to the management of the estate; but in the absence of these and all similar causes we know of no authority in the courts to take from the executor the power and duties conferred upon him by the testator [citing the above case of Noble]. As we have said, every one has the right to make his own will, and to appoint his own agents for carrying it into effect, and when not against the law of the land it would be an usurpation of power and a dangerous infringement of a sacred right for the courts to change, or in any way modify, the wishes and purposes of the testator as solemnly expressed in his last will and testament," &c.

We do not think the case should be controlled by the different statutes cited, as to who is the proper officer to make sales ordered by the Court of Common Pleas. The question is not what officer shall make a sale ordered by the court, but whether the court should order the sale at all, or leave it to be made as the law directs, under the terms of the will itself.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.